UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RICHARD L. MULLINS, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:17-cv-00547-JRS-DLP |
| WEXFORD HEALTHCARE SOURCES, et al. | ) |
| Defendants. | ) |

**Order Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Richard L. Mullins, an inmate at Putnamville Correctional Facility in Greencastle, Indiana, brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs while he was incarcerated at Wabash Valley Correctional Facility in Carlisle, Indiana ("WVCF"). The defendants are (1) Dr. Samuel Dr. Byrd, (2) Kim Hobson, (3) R. Robinson, (4) Laura Petty, (5) Robert Lundy, and (6) Wexford Healthcare Sources.

The defendants have moved for summary judgment. For the reasons explained in this Order, the defendants are entitled to summary judgment on all of Mr. Mullins's claims.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited by an adverse party do not establish the

1

absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573−74 (7th Cir. 2017) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Factual Background

Mr. Mullins was transferred to WVCF in July 2017. All the events discussed below occurred in 2017 unless otherwise noted. At the relevant times, defendants Laura Petty and Robert Lundy were state employees and lieutenants at WVCF. Defendants Kim Hobson (a healthcare administrator), R. Robinson (a registered nurse), and Dr. Samuel Byrd were all employees of defendant Wexford Healthcare Sources.

Between August 4 and August 11, Mr. Mullins told Lundy and Petty that he had poison ivy and asked to be referred for an injection. Dkt. 78-1 at 14−15. According to Mr. Mullins, Lundy and Petty told him he could not receive the injection because Mr. Mullins was not on a labor line. *Id.* at 15, 19. Petty instructed Mr. Mullins to file healthcare request forms. *Id.* at 20. Mr. Mullins asked Lundy and Petty to advocate on his behalf with medical staff, but they declined to do so. *Id.* at 26.

On August 7, Mr. Mullins submitted a healthcare request form stating that he had either poison ivy or poison oak all over his body. Dkt. 78-2 at 26. He wanted an injection that he believed would help relieve either of those conditions. Dkt. 78-1 at 23. Also on August 7, Mr. Mullins submitted an informal grievance complaining about poison ivy or poison oak. Dkt. 73-11. Defendant Robinson responded to the informal grievance on August 8. *Id.* She noted that Mr. Mullins had seen a medical provider on August 7 and instructed him to submit healthcare request forms if his problems persisted. *Id.*

On August 8, Mr. Mullins submitted another healthcare request form, this time stating that he had shingles and that a nurse had informed him he would be given antibiotics to treat his shingles. Dkt. 78-2 at 25. Also on August 8, Dr. Byrd instructed a non-defendant member of the nursing staff to give Mr. Mullins a Dexamethasone Sodium Phosphate ("Dexamethasone")

3

injection. Dkt. 73-1 at 2; *see also* dkt. 78-2 at 25. Mr. Mullins maintains that he never received an injection. Dkt. 78-1 at 31.

On August 10, prison custody staff contacted Dr. Byrd about Mr. Mullins's ongoing pain. Dkt. 73-4 at 1. Dr. Byrd noted the prior treatments of Prednisone and Dexamethasone. *Id.* He then prescribed a low dose of Pamelor for Mr. Mullins's pain and Acyclovir to treat the shingles virus. *Id.*; *see* dkt. 78-2 at 17; dkt. 73-1 at 3.

On August 11, Mr. Mullins filed a healthcare request form complaining that his shingles were painful and asking to see a doctor. Dkt. 78-2 at 22. A non-defendant member of the health care staff responded to the grievance on August 12, noting that Mr. Mullins had been prescribed pain medication and that the doctor was following his progress. *Id.* Also on August 11, Mr. Mullins filed an informal grievance complaining that he had not been seen by medical staff for his shingles. Dkt. 78-1 at 55. Defendant Hobson learned of the grievance by email on October 26, and she was otherwise unfamiliar with Mr. Mullins's skin conditions. Dkt. 73-13 at 1; *see also* Dkt. 73-14. Hobson responded to the grievance on October 26, summarizing the treatment Mr. Mullins had received for shingles and eczema between August 8 and October 26. Dkt. 73-16.[1]

On August 21, Mr. Mullins filed a healthcare request form seeking an Acyclovir refill. Dkt. 78-2 at 17. A non-defendant member of the healthcare staff responded on August 23 informing Mr. Mullins that the Acyclovir treatment was complete. *Id.*

On August 22, Mr. Mullins had his first in-person visit with Dr. Byrd. Dkt. 73-6 at 1. Dr. Byrd formally diagnosed Mr. Mullins with shingles (herpes zoster) and noted that the shingles rashes were itchy and painful. *Id.* at 1, 3. Dr. Byrd replaced the Pamelor prescription with

---

[1] Before Mr. Mullins was transferred to WVCF, he had been diagnosed with either eczema or plaque psoriasis (or both). He continued to receive treatment for this skin condition while at WVCF.

Cymbalta to treat Mr. Mullins's pain. *Id.* at 3. Dr. Byrd also prescribed Zyrtec to treat Mr. Mullins's itchiness. *Id.*

On August 31, Mr. Mullins filed a healthcare request form stating that he had been taking Pamelor and Cymbalta for his shingles, but was still in pain. Dkt. 78-2 at 16.

On September 1, Mr. Mullins filed a healthcare request form complaining that he had stopped receiving Cymbalta. *Id.* at 14. A non-defendant healthcare staff member responded on September 5, noting that the area that had been afflicted with shingles was now clear. *Id.*

Mr. Mullins's other healthcare request forms in September and October did not mention shingles. *Id.* at 1−13. On September 13, September 21, October 6, October 15, and October 31, Mr. Mullins filed healthcare request forms seeking a Humira injection for his psoriasis or eczema. *Id.* at 1−2, 9, 11−12. On October 21, Mr. Mullins refused to continue taking Cymbalta because it made him sleepy and depressed. *Id.* at 5.

On November 25 and December 5, Mr. Mullins filed healthcare request forms complaining about pain where the shingles had been. *Id.* at 39, 45. Mr. Mullins saw Dr. Byrd on December 12 about other maladies and did not complain about his shingles thereafter. *Id.* at 38.

### III. Discussion

Mr. Mullins alleges that the individual defendants are liable because they were deliberately indifferent to his serious medical condition of shingles. Pursuant to the Eighth Amendment, prison officials have a duty to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate that (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the condition but was deliberately indifferent to the substantial risk of harm it posed. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766,

775 (7th Cir. 2014). Deliberate indifference in this context is "something akin to recklessness." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Id. at* 753. Here, no defendant argues for summary judgment based on the lack of a serious medical need. Accordingly, the Court will consider only whether each defendant was deliberately indifferent to Mr. Mullins's condition.

### A. Dr. Byrd

For a medical practitioner, deliberate indifference can be shown by "persistence with a course of treatment that [the provider] knows will be ineffective" or a "treatment decision that is 'so far afield of accepted professional standards' that a jury could find it was not the product of medical judgment." *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

Dr. Byrd promptly responded to Mr. Mullins's request for treatment. Mr. Mullins filed the first relevant healthcare request form on August 7. Dkt. 78-2 at 26. The next day, Dr. Byrd instructed a member of the medical staff to give Mr. Mullins a Dexamethasone injection to treat his shingles. Dkt 73-1 at 2; *see also* dkt. 78-2 at 25.

Mr. Mullins asserts that he never received the injection, dkt. 78-1, but Dr. Byrd was not required to administer it personally. Dr. Byrd's contemporaneous notes show that he believed the treatment was administered. Dkt. 73-4 at 1 ("He was given a dexamethasone shot by Nursing initially when I was contacted."). And multiple sources support that belief. *See* dkt. 78-2 at 25 (medical staff member noting "Injection given 8-8-17"); dkt. 73-9 at 5 (medical summary indicating one-time Dexamethasone injection).

On August 10, when Dr. Byrd learned that the Dexamethasone had not relieved Mr. Mullins's symptoms, Dr. Byrd prescribed Pamelor for pain relief and Acyclovir to combat the shingles virus. Dkt. 73-4 at 1; dkt. 78-2 at 17; dkt. 73-1 at 3.

On August 22, shortly after the Acyclovir treatment was completed, Dr. Byrd prescribed Zyrtec to treat Mr. Mullins's itchiness. Dkt. 73-6 at 3. On the same day, Dr. Byrd replaced the Pamelor prescription with Cymbalta because Mr. Mullins complained that Pamelor was not relieving his pain. *Id.* at 1.

By September 5, Mr. Mullins's shingles had cleared. Dkt. 78-2 at 14. Mr. Mullins sometimes experienced pain where the shingles had been, but he points to no evidence that Dr. Byrd was deliberately indifferent to that pain.

Based on this evidence, no factfinder could find that Dr. Byrd was deliberately indifferent to Mr. Mullins's condition. Dr. Byrd reacted quickly to Mr. Mullins's request for treatment and tried new treatments when Mr. Mullins complained that existing ones were ineffective.

**B.    R. Robinson**

The only record evidence of Robinson's involvement in Mr. Mullins's treatment is her response to his August 7 informal grievance. Dkt. 78-1 at 51−52. In that grievance, Mr. Mullins complained about poison ivy or poison oak "all over [his] body." Dkt. 73-11. Robinson responded on August 8. *Id.* She noted that medical staff saw Mr. Mullins on August 7 and instructed him to file another healthcare request form if his problems persisted. *Id.* Mr. Mullins followed Robinson's instructions, filing a healthcare request form on August 8, and he was seen again by medical staff the same day. Dkt. 78-2 at 25. Also on August 8, Dr. Byrd instructed medical staff to administer a Dexamethasone injection. Dkt. 73-4 at 1; dkt. 78-2 at 25; dkt. 73-9 at 5.

7

There is no record evidence that would allow a reasonable factfinder to conclude that Robinson was deliberately indifferent to Mr. Mullins's condition.

**C.      Hobson**

The only record evidence of Hobson's involvement in Mr. Mullins's treatment is her response to his August 11 informal grievance. Dkt. 78-1 at 54−55. Mr. Mullins alleges that Hobson responded to the grievance by "stating that since [Mr. Mullins] did not work on a labor line, [she] could do nothing for him." Dkt. 1 at 4. The record does not support that allegation.

Hobson did not learn of the grievance — or Mr. Mullins's skin conditions — until October 26. Dkt. 73-13 at 1; *see also* dkt. 73-14. And her response merely summarized the treatment Mr. Mullins had received for shingles and eczema between August 8 and October 26. Dkt. 73-16.

A reasonable factfinder could not conclude that Hobson was deliberately indifferent to Mr. Mullins's condition.

**D.      Lundy and Petty**

Mr. Mullins alleges that Lundy and Petty "refused to provide any treatment or care." Dkt. 1 at 4. At his deposition, Mr. Mullins testified that he told Lundy and Petty between August 4 and August 11 that he wanted to see medical staff for an injection to treat poison ivy or poison oak. Dkt. 78-1 at 12. He further testified that Lundy and Petty told him he could not receive the injection because he was not on a labor line. *Id.* But Lundy and Petty were not medical providers. Mr. Mullins received medical treatment during this time, and neither Lundy nor Petty interfered with medical staff's decisions. Dkt. 78-1 at 27.

Mr. Mullins further testified Lundy and Petty would not advocate to medical staff on his behalf. *Id.* at 26. But "non-medical officials may reasonably defer to the judgment of medical

professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). Mr. Mullins was consulting with medical staff and receiving treatment. Lundy and Petty had no obligation to question that treatment or advocate on Mr. Mullins's behalf.

A reasonable factfinder could not conclude that Lundy or Petty was deliberately indifferent to Mr. Mullins's condition.

### E. Wexford

Wexford is a private corporation that serves as WVCF's healthcare provider. As a private corporation, Wexford "cannot be held liable under [42 U.S.C.] § 1983 unless it maintained an unconstitutional policy or custom" that caused Mr. Mullins's injury. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015).

Wexford asserts that it has no policy, practice, or custom regarding shingles and that Wexford employees are instructed to follow applicable Health Care Services Directives maintained and authored by the Indiana Department of Correction. Dkt. 72 at 5; *see also* dkt. 73-1 at 6. Mr. Mullins asserts that he is not aware of any Wexford policy, practice, or custom that caused his alleged mistreatment. Dkt. 78-1 at 60.

There is no evidence in the record that Wexford has any unconstitutional policy, practice, or custom of denying requests for medical treatment or of condoning deliberate indifference to serious medical needs. Wexford is therefore entitled to judgment as a matter of law.

### IV. Conclusion

There is no evidence that any individual defendant was deliberately indifferent to Mr. Mullins's shingles. Likewise, there is no evidence of any unconstitutional Wexford policy, practice, or custom in this regard. Accordingly, the defendants' motions for summary judgment,

9

dkt. [68] and dkt. [71], are **granted**. Mr. Mullins's claims are dismissed with prejudice. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 7/17/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

RICHARD L. MULLINS
239275
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Lyubov Gore
INDIANA ATTORNEY GENERAL
lyubov.gore@atg.in.gov

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov

Sierra A. Murray
INDIANA ATTORNEY GENERAL
sierra.murray@atg.in.gov

Jarod Zimmerman
KATZ KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com